## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **SHARON WEINSTOCK**, individually, as the legal guardian of plaintiff Geula Weinstock, and as personal representative of the Estates of Yitzchak Weinstock, Dov Weinstock, Rabbi Simon Dolgin, and Shirley Dolgin; | Civil Action No. 1:17cv23272 |
| **MOSHE WEINSTOCK**, individually, as the legal guardian of Geula Weinstock, and as personal representative of the Estates of Yitzchak Weinstock and Dov Weinstock; | **Jury Trial Demanded** |
| **GEULA WEINSTOCK**; **ARYEH WEINSTOCK**; **CHAIM WEINSTOCK**; **ESTATE OF YITZCHAK WEINSTOCK**; **ESTATE OF DOV WEINSTOCK**; **ESTATE OF RABBI SIMON DOLGIN**; and **ESTATE OF SHIRLEY DOLGIN**, | |

　　　　　　　　　　　　Plaintiffs,

　vs.

**THE ISLAMIC REPUBLIC OF IRAN**; and
**HAMAS – THE ISLAMIC RESISTANCE MOVEMENT**
(a/k/a "Harakat al-Muqawamah al-Islamiyya")

　　　　　　　　　　　　Defendants.
_____/

## COMPLAINT

　　　　Plaintiffs, by counsel, bring this action for damages against the defendants, and allege as follows:

## INTRODUCTION

　　　　1.　　This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, the Antiterrorism Act, 18 U.S.C. § 2333, and supplemental causes of action, seeking damages for wrongful death, personal injury and related torts, arising from a terrorist shooting

attack on December 1, 1993, near Jerusalem, Israel, in which Yitzchak Weinstock, a 19-year-old U.S. citizen, was murdered (the "Terrorist Attack").

2. The Terrorist Attack in which Yitzchak Weinstock was murdered was planned and carried out by defendant Hamas – The Islamic Resistance Movement ("Hamas"), utilizing material support and resources provided by defendant The Islamic Republic of Iran ("Iran").

3. This action is brought by decedent Yitzchak Weinstock's estate, mother, and siblings, all of whom are U.S. citizens, the estate of his late father, and the estates of his late grandparents, both of whom were U.S. citizens.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a), 1331 and 1605A, and 18 U.S.C. §§ 2333 and 2338.

5. This Court has personal jurisdiction over defendant Iran pursuant to 28 U.S.C. § 1330(b).

6. This Court has personal jurisdiction over defendant Hamas because, as detailed below, Hamas took actions in the United States that enabled and caused the Terrorist Attack.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3) and the rules of pendent venue.

## THE PARTIES

8. Plaintiff Sharon Weinstock is and at all times was an American citizen. She is the mother, heir and co-personal representative of the estate of American citizen Yitzchak Weinstock, who was murdered in the Terrorist Attack. She is also the mother and co-legal guardian of plaintiff Geula Weinstock. She is also the widow and co-personal representative of the estate of Dov Weinstock, the late father and heir of Yitzchak Weinstock. She is also the

personal representative of the estates of American citizens Rabbi Simon Dolgin, and Shirley Dolgin, the late grandparents of Yitzchak Weinstock. Sharon Weinstock brings this action individually, as legal guardian of plaintiff Geula Weinstock, and as personal representative of the estates of Yitzchak Weinstock, Dov Weinstock, Rabbi Simon Dolgin, and Shirley Dolgin.

9. Plaintiff Moshe Weinstock is and at all times was an American citizen. He is the brother of decedent Yitzhak Weinstock, and co-personal representative of the estates of Yitzchak Weinstock and Dov Weinstock. He is also the co-legal guardian of plaintiff Geula Weinstock. Moshe Weinstock brings this action individually, as the legal guardian of Geula Weinstock, and as personal representative of the estates of Yitzchak Weinstock and Dov Weinstock.

10. Plaintiff Geula Weinstock is and at all times was an American citizen. She is the sister of decedent Yitzhak Weinstock. Geula Weinstock is represented in this action by her legal guardians, Sharon Weinstock and Moshe Weinstock.

11. Plaintiff Aryeh Weinstock is and at all times was an American citizen. He is the brother of decedent Yitzhak Weinstock.

12. Plaintiff Chaim Weinstock is and at all times was an American citizen. He is the brother of decedent Yitzhak Weinstock.

13. Plaintiff the Estate of Yitzchak Weinstock brings this action through its co-personal representatives, Sharon Weinstock and Moshe Weinstock.

14. Plaintiff the Estate of Dov Weinstock brings this action through its co-personal representatives, Sharon Weinstock and Moshe Weinstock.

15. Plaintiff the Estate of Rabbi Simon Dolgin brings this action through its personal representative, Sharon Weinstock.

16. Plaintiff the Estate of Shirley Dolgin brings this action through its personal representative, Sharon Weinstock.

17. Defendant the Islamic Republic of Iran is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. § 1605A, including the Terrorist Attack, authorized and ratified the actions of its officials, employees and agents described herein, and performed other actions that facilitated, enabled, and caused the Terrorist Attack and the harm to the plaintiffs herein.

18. Defendant Hamas carried out the Terrorist Attack. In the years prior to the Terrorist Attack, acting from within the United States and through its agents located within the United States, Hamas raised and laundered millions of dollars which it used to build and maintain an organizational and operational terrorist infrastructure in the West Bank and Gaza Strip, and took other actions, which enabled, facilitated and caused the Terrorist Attack.

## STATEMENT OF FACTS

### Hamas

19. Defendant Hamas – The Islamic Resistance Movement was founded in December 1987 by Sheikh Ahmed Yassin, a militant Gaza-based Islamic cleric, and a small group of like-minded extremists.[1] Among that founding group was Yassin's close associate, Mousa Mohammed Abu Marzook ("Abu Marzook"), who was then a resident of the United States.

---

[1] The name "Hamas" is an acronym for the Arabic phrase **Ha**rakat al-**M**uqawamah **a**l-**Is**lamiyya which means "The Islamic Resistance Movement."

20. Hamas' official charter calls for the annihilation of the State of Israel and the creation of an Islamic state in the territory comprising Israel, the West Bank and the Gaza Strip. Since its founding, Hamas has sought to achieve this goal by using terrorist violence to weaken, undermine and demoralize the State of Israel, and Israel's population, institutions, and economy. Hamas' founding charter explicitly provides that the "usurpation of Palestine by the Jews" should be reversed through a "holy war" and the use of violence.

21. At all relevant times, Hamas has carried out terrorist attacks through its military wing, known as the Izz A-Din Al-Qassam Brigades ("Al-Qassam Brigades").

22. At all times, Hamas has used terrorist attacks to attempt to force and intimidate the government and citizens of Israel to cede physical and political control over Israel, the West Bank, and the Gaza Strip, in order to establish an Islamic government in these areas.

23. At all times, Hamas has also used terrorist violence to create an atmosphere of crisis and instability in the Middle East, in order to draw the United States into the Israeli-Palestinian conflict in the role of moderator. Hamas does this because it believes that the United States is interested in achieving calm and stability in the Middle East, and will therefore use its influence with Israel to convince Israel to make concessions to the Palestinians in order to end the terrorist violence perpetrated by Hamas and achieve calm.

24. Hamas co-founder and senior leader Abu Marzook was continuously domiciled and resident in the United States from 1981 until early 1993. Upon Hamas' establishment in late 1987, Abu Marzook began to carry out extensive activities in the United States on behalf and in support of Hamas. These activities continued through the date of the Terrorist Attack, December 1, 1993. Among the activities he performed on behalf and in support of Hamas in the United States between late 1987 and the date of the Terrorist Attack, Abu Marzook: (a) raised millions

of dollars for Hamas which he sent and/or caused to be sent to Hamas, and to Hamas leaders and operatives, in the West Bank and Gaza Strip; (b) built and organized a permanent U.S.-based fund-raising and recruitment apparatus for Hamas, consisting of both individuals domiciled in the U.S. and U.S.-incorporated associations; (c) recruited individuals domiciled in the U.S. and elsewhere to serve as leaders and operatives in Hamas, and to perform a wide variety of services and actions on behalf of Hamas in the United States, in the West Bank and Gaza Strip, and elsewhere; and (d) sent Hamas operatives from the United States to the West Bank and Gaza, bearing instructions and funds supplied by Abu Marzook, for the purpose of organizing and funding Hamas terrorist attacks.

25. In 1991, while domiciled and residing in the United States, Abu Marzook was elected Chief of the Hamas Political Bureau.

26. In early 1993 Abu Marzook relocated to Jordan, where he continued to carry out his U.S.-based fund-raising, recruitment, organizational, and other activities in support and on behalf of Hamas, through Hamas operatives based in the U.S. and Hamas-affiliated associations incorporated in the U.S.

27. In 2003, a federal grand jury indicted Abu Marzook on racketeering charges for his activities on behalf of Hamas in the United States beginning in 1988. *U.S. v. Abu Marzook, et al.*, 1:03-cr-00978 (N.D.Ill). Following the unsealing of this indictment in August 2004, the U.S. Attorney for the Northern District of Illinois issued an official press release, correctly summarizing Abu Marzook's U.S.-based activities on behalf of Hamas as follows:

> From 1988 until February 1993, while living in the United States, Marzook coordinated and financed the activities of Hamas within the United States and elsewhere, first from Louisiana and then from Northern Virginia. During that period, he traveled throughout the United States to meet with other American-based Hamas members, as well as foreign-based Hamas members traveling to

6

the United States for organizational purposes. Abu Marzook additionally maintained constant phone contact with Hamas membership and leadership in the United States and abroad. During this time, he also maintained and shared numerous bank accounts through which substantial sums of money were transferred from bank accounts located outside the United States to other accounts within the United States … for ultimate disbursal to accounts and individuals outside the United States for use in furtherance of Hamas[2]

28. The financial support, personnel, organization-building activities and assistance, and other material resources and support obtained and received by Hamas through the U.S.-based activities of its agents in the U.S., including particularly senior Hamas leader and operative Abu Marzook, enabled, facilitated, and caused Hamas to build, maintain and activate the human, material, and operational resources and infrastructure needed and used by Hamas to plan, organize and execute acts of terrorism and murder, including the Terrorist Attack.

### **Iran Shares Hamas' Goals and Supports its Terrorist Activities**

29. Since the 1979 Iranian Revolution, Iran has been ruled by a series of governments deeply hostile to the United States and to Israel.

30. Since 1984 until the present time, Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

31. During all periods relevant to this suit, it has been the continuous and official policy of Iran to use terrorism against the United States and its allies, including Israel, to advance its interests both domestically and abroad. By providing material support and resources to

---

[2] Available at: https://www.justice.gov/archive/usao/iln/chicago/2004/pr0820_01.pdf

terrorist organizations, Iran is able to enlist these terrorist proxies to carry out attacks against the United States and Israel, and advance Iranian interests around the world. Iran exploits its support for terrorist organizations to obtain leverage with other countries, either "punishing" them or obtaining concessions from them.

32. Additionally, Iran utilizes its support of international terrorism to attempt to (a) intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically and (b) intimidate and influence the Israeli government and public and thereby seek to bring about the eventual eradication of the State of Israel, its replacement with an Islamic/Arab state, and the murder and/or expulsion of the Jewish residents of the State of Israel.

33. Towards these ends, Iran has provided massive material support and resources to numerous anti-American and anti-Israel terrorist organizations, including Hamas, which shares Iran's violently anti-American and anti-Israel ideology and goals.

### Iran's Provision of Material Support and Resources to Hamas

34. During the period relevant hereto, Iran provided Hamas with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, including the Terrorist Attack. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas achieve goals shared by Iran. These goals included terrorizing the Jewish population in Israel, weakening Israel's economy, social fabric, and military strength and preparedness, and harming Israel's allies and supporters, especially the United States.

35. Iran provided the material support and resources detailed below pursuant to an agreement reached between Iran and Hamas in the years prior to the Terrorist Attack, which remains in force until today. Under that agreement, Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel and elsewhere, and in return Iran undertook to provide Hamas with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement between Iran and Hamas was to achieve the goals detailed in the preceding paragraph.

36. Iran provided the material support and resources detailed below through its security and intelligence agencies. These security and intelligence agencies included primarily, but without limitation, Iran's Ministry of Intelligence and Security ("MOIS"), the Islamic Revolutionary Guard Corps ("IRGC"), and a subdivision of the IRGC known as the Islamic Revolutionary Guard Corps-Quds Force ("IRGC-QF").

37. Iran provided Hamas with the material support and resources detailed below through officials, employees, and agents of Iran who worked in or with MOIS, the IRGC and the IRGC-QF. These Iranian officials, employees, and agents included without limitation: Ali Fallahian, Saeed Emami, Mohsen Rezaee, and Ahmad Vahidi (collectively below: "Iranian Officials").

38. In addition, at all times relevant hereto, Iran and the Iranian Officials provided Hamas with the material support and resources detailed below, by and through the agency of the Hezbollah terrorist organization and other Iranian-supported terrorist groups and terrorist operatives (collectively below: "Iranian Agents"), which and who received material support and resources from Iran and the Iranian Officials for the purpose of providing material support and resources to Hamas, and which acted as agents and proxies of Iran and the Iranian Officials for

that purpose. The Iranian Officials and the Iranian Agents are collectively referred to below as Iran's "Officials and Agents."

39. The material support and resources that were provided to Hamas by Iran and its Officials and Agents in the years immediately prior to the Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included inter alia: provision of financial support to Hamas; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to Hamas; provision of military-grade explosives, military firearms and other weapons and matériel to Hamas; providing use of training bases and military facilities in which terrorist training was provided to Hamas and its operatives; providing Hamas and its leaders and operatives safe haven and refuge from capture; providing Hamas means of electronic communication; providing Hamas with financial services, including banking and wire transfer services; and providing Hamas means of transportation, including allowing leaders and operatives of Hamas passage on Iranian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

40. Iran and its Officials and Agents gave substantial aid and assistance to Hamas, and provided the massive material support and resources described above to Hamas, and thereby aided and abetted Hamas, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, including the Terrorist Attack. Iran and its Officials and Agents did so with actual knowledge that Hamas had killed and injured U.S. citizens in terrorist attacks and that additional U.S. citizens and other persons would be killed and injured as a result of their aiding, abetting, and provision of material support and resources to Hamas.

41. Iran and its Officials and Agents knowingly and willingly conspired, agreed and acted in concert with Hamas, in pursuance of the common plan, design, agreement and goals

discussed above, to cause and facilitate the commission of acts of extrajudicial killing, including the Terrorist Attack. Iran and its Officials and Agents did so with actual knowledge that Hamas had killed and injured U.S. citizens and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas.

42.     At all times relevant hereto, MOIS, IRGC and the IRGC-QF were agencies, instrumentalities and/or offices of Iran, and performed actions on behalf of Iran, in furtherance of the interests and policy of Iran and within the scope of their agency and office, within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that MOIS, IRGC and the IRGC-QF implemented and acted as conduits and instrumentalities for Iran's provision of funds, terrorist training, and other material support and resources to Hamas for the commission of acts of extrajudicial killing including the Terrorist Attack.

43.     Iran authorized, ratified and approved the actions of MOIS, IRGC and the IRGC-QF described herein, and is therefore vicariously liable for those actions.

44.     At all relevant times, Iran's Officials and Agents were officials, employees, and/or agents of Iran, and performed actions on behalf of Iran, in furtherance of the interests and policy of Iran, and within the scope of their office, employment and agency, within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that Iran's Officials and Agents authorized, planned and caused the provision of funds, terrorist training and other material support and resources by Iran to Hamas for the commission of acts of extrajudicial killing including the Terrorist Attack.

45.     Iran authorized, ratified and approved the actions described herein of its Officials and Agents, and is therefore vicariously liable for those actions.

**The Terrorist Attack**

46. On November 30, 1993, U.S. citizen Yitzchak Weinstock, then 19, stayed the night at the home of his grandparents, Rabbi Simon Dolgin and Shirley Doglin, in Jerusalem.

47. Yitzchak had spent the previous year studying in a yeshiva located north of Jerusalem, and he planned to travel the following morning to pay a visit to his rabbis, teachers, and friends at the yeshiva.

48. The next morning, December 1, 1993, Yitzchak traveled from his grandparents' home to Highway 60, a major North-South artery that runs from the city of Nazareth in the Galilee to the city of Beer Sheba in the Negev desert, intersecting Jerusalem.

49. Yitzhak hitched a ride with a private car headed north on Highway 60. In addition to Yitzhak and the driver, the driver's daughter and another hitchhiker, Shalva Ozana, were also in the car. A short time later, about nine miles north of Jerusalem, the car's exhaust pipe developed a problem, and the driver stopped his car on the side of the road. The driver got out of the car to fix the problem, and Yitzhak also exited the car, to help the driver with the repair.

50. At an unknown time prior to December 1, 1993, Hamas' military wing, the Al-Qassam Brigades, had planned, conspired and made preparations to carry out a terrorist shooting on Highway 60 north of Jerusalem.

51. Pursuant to the aforementioned plan, a vehicle containing three terrorist operatives of Hamas' Al-Qassam Brigades armed with automatic assault rifles approached Yitzhak and the driver as they were attempting to resolve the exhaust pipe problem. The Hamas vehicle pulled up alongside the disabled car, and the terrorists inside opened fire with their automatic weapons on Yitzhak and his traveling companions. The Hamas vehicle then sped from the scene and successfully escaped.

52. Yitzhak and the other hitchhiker, Shalva Ozana, were both hit by the Hamas machine-gun fire. Ms. Ozana, a 24-year-old kindergarten teacher, was killed on the spot, and Yitzhak was mortally wounded.[3] Paramedics performed emergency procedures on Yitzhak at the scene and rushed him to Hadassah Medical Center in Jerusalem. A team of doctors at Hadassah attempted to save Yitzhak's life for some 18 hours, but he died of his wounds early the following day, December 2, 1993.

53. In an official written Arabic-language communiqué distributed by Hamas a short time later in the West Bank (which was obtained by Israeli authorities and included in a still-classified intelligence survey to which plaintiffs were recently permitted special access) Hamas confirmed that it had carried out the Terrorist Attack in which Yitzhak Weinstock was murdered.

54. Hamas was enabled to, and did in fact: recruit, indoctrinate, conceal, and train the operatives who carried out the Terrorist Attack; purchase the weapons and vehicle used in the Terrorist Attack; build, maintain and activate the human, material, and operational infrastructure needed and used to plan, organize and execute the Terrorist Attack; and take all the other steps necessary to carry out the Terrorist Attack; as the result of, due to, and by utilizing, the financial support, personnel, organization-building activities and assistance, and other material resources and support that were provided to Hamas by Iran and that were obtained by Hamas through the U.S.-based activities of its agents, led by Abu Marzook.

---

[3] The driver and his daughter were also lightly wounded in the attack.

## FIRST CAUSE OF ACTION
## BY PLAINTIFFS SHARON WEINSTOCK, MOSHE WEINSTOCK, GEULA WEINSTOCK, ARYEH WEINSTOCK, CHAIM WEINSTOCK, AND THE ESTATES OF YITZCHAK WEINSTOCK, RABBI SIMON DOLGIN, AND SHIRLEY DOLGIN AGAINST DEFENDANT IRAN
## ACTION FOR DAMAGES UNDER 28 U.S.C. § 1605A(c)

55. The preceding paragraphs are incorporated by reference as though fully set forth herein.

56. Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

57. Iran provided to Hamas material support and resources, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Terrorist Attack.

58. Iran conspired with Hamas to carry out the Terrorist Attack.

59. MOIS, IRGC and the IRGC-QF are agencies, instrumentalities and/or offices of Iran, and they provided the material support and resources which caused and facilitated the Terrorist Attack, and conspired with Hamas to carry out the Terrorist Attack, all within the scope of their agency and office.

60. Iran's Officials and Agents are officials, employees, and/or agents of Iran, and they provided the material support and resources which caused and facilitated the Terrorist Attack, and conspired with Hamas to carry out the Terrorist Attack, all while acting within the scope of their office, employment, and agency.

61. Hamas is an agent of Iran, and it carried out the Terrorist Attack while acting within the scope of its agency.

62. The Terrorist Attack was an extrajudicial killing within the meaning of 28 U.S.C. § 1605A.

63. The Terrorist Attack caused the decedent, his estate, plaintiffs Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, and Chaim Weinstock, and decedents Rabbi Simon Dolgin and Shirley Dolgin, severe injury, including: pain and suffering; economic damages and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

64. The Terrorist Attack and the harm and injuries suffered by the plaintiffs were the direct and proximate result of Iran's conduct described herein.

65. Iran is therefore liable for the full amount of plaintiffs' damages under 28 U.S.C. § 1605A(c), in such sums as may hereinafter be determined.

66. Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## SECOND CAUSE OF ACTION
## BY PLAINTIFF ESTATE OF DOV WEINSTOCK
## AGAINST DEFENDANT IRAN
## <u>NEGLIGENCE</u>
## (Under the Law of the State of Israel)

67. The preceding paragraphs are incorporated by reference as though fully set forth herein.

68. Decedent Dov Weinstock, the late father of decedent U.S. citizen Yitzchak Weinstock, was himself not a U.S. citizen and his estate is not entitled to bring claims against defendant Iran under the federal cause of action provided by 28 U.S.C. § 1605A(c). The Estate of Dov Weinstock therefore asserts its claims against Iran under the law of the State of Israel.

69. Causes of action in tort in Israeli law are codified in the Civil Wrongs Ordinance (New Version) - 1968 ("CWO"). Section 35 of the CWO creates a tort of Negligence, and provides in relevant part that a person is liable for Negligence when he commits an act which a

reasonable and prudent person would not have committed under the circumstances, and thereby harms another person toward whom, under those circumstances, he is obligated not to act as he did. "Israeli law thus imposes liability for negligence in a manner roughly similar to American tort law: liability attaches where one has a duty to another and breaches that duty, causing injury to the other." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 58 (D.D.C. 2010).

70.     CWO § 36 provides that the duty of care in CWO § 35 is toward all persons, to the extent that a reasonable person would have foreseen under the same circumstances that, in the ordinary course of events, they were liable to be injured.

71.     Under binding precedent of the Israeli Supreme Court, the tort of Negligence under the CWO also applies to intentional and/or reckless conduct.

72.     Iran committed acts which a reasonable and prudent person would not have committed under the circumstances. Iran acted negligently in connection with decedents Yitzchak Weinstock and Dov Weinstock, toward whom, in the circumstances described herein, Iran had an obligation not to act as it did. Iran was obligated not to act as it did because a reasonable person would have foreseen, under the circumstances, that in the ordinary course of events, these decedents were liable to be injured by Iran's acts described herein.

73.     Iran's behavior therefore constitutes Negligence under the Israeli CWO, and as a result of Iran's negligent behavior Yitzchak Weinstock was murdered and decedent Dov Weinstock was severely injured.

74.     The murder of Yitzchak Weinstock caused decedent Dov Weinstock severe injury, including: economic damages and loss of income; loss of companionship and society; loss of consortium; and severe emotional and mental distress, anguish and injury.

75. Iran is therefore liable for the full amount of decedent Dov Weinstock's damages, in such sums as may hereinafter be determined.

76. Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**THIRD CAUSE OF ACTION
BY ALL PLAINTIFFS
AGAINST DEFENDANT HAMAS
<u>INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333</u>**

77. The preceding paragraphs are incorporated by reference as though fully set forth herein.

78. The actions of defendant Hamas constituted "acts of international terrorism" as defined in 18 U.S.C. § 2331.

79. As required by § 2331, the actions of Hamas constituted a violation of numerous federal and state criminal laws, including without limitation the criminal violations for which Hamas leader Abu Marzook was indicted, and which were identified in the indictment as predicate racketeering crimes, in *U.S. v. Abu Marzook, et al.*, 1:03-cr-00978 (N.D.Ill).

80. As required by § 2331, Hamas' actions were violent and dangerous to human life, as evidenced by their consequences and by the fact that at all times Hamas has been a violent terrorist organization which has murdered scores of innocent civilians, including numerous U.S. citizens, and has openly proclaimed its intention to murder other such innocent civilians.

81. As required by § 2331, Hamas' actions transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locales in which Hamas operated and sought asylum.

82. As required by § 2331, Hamas' actions appeared to be intended to intimidate and coerce a civilian population (the civilian population of Israel), to influence the policy of a

government by intimidation or coercion (the governments of Israel and the U.S.), and to affect the conduct of a government by mass destruction, assassination, and kidnapping (the governments of Israel and the U.S.).

83. The actions of defendant Hamas therefore constituted "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333.

84. As a direct and proximate result of Hamas's acts of international terrorism Yitzchak Weinstock was murdered, and the plaintiffs suffered the harm described herein.

85. The murder of Yitzchak Weinstock caused the decedent, his estate, plaintiffs Sharon Weinstock, Moshe Weinstock, Geula Weinstock, Aryeh Weinstock, and Chaim Weinstock, and decedents Dov Weinstock, Rabbi Simon Dolgin and Shirley Dolgin, severe injury, including: pain and suffering; economic damages and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

86. Hamas is therefore liable for the full amount of plaintiffs' damages in such sums as may hereinafter be determined, trebled pursuant to 18 U.S.C. § 2333.

**WHEREFORE**, plaintiffs demand judgment as follows:

a. Judgment against defendants Iran and Hamas for compensatory damages in an amount to be determined at trial, which are not less than $180,000,000 (one hundred eighty million dollars);

b. Judgment against Hamas for treble damages pursuant to 18 U.S.C. § 2333;

c. Judgment against Iran and Hamas for punitive damages in an amount to be determined at trial;

d. Plaintiffs' costs and expenses;

e.  Plaintiffs' attorneys' fees; and

f.  Such further relief as the Court finds just and equitable.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

August 29, 2017

                Plaintiffs, by their attorneys,

By:  /s/ Asher Perlin
     Asher Perlin, Esq.
     Florida Bar No. 0979112
     4600 Sheridan Street, Suite 303
     Hollywood, Florida 33021
     Tel. 954-284-0900 ext. 102
     Fax. 954-284-0747
     Email: asherperlin@gmail.com