# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

SHARON WEINSTOCK, et al.,

                    Plaintiffs,

        vs.                                    Civ. No. 17-cv-23272-RNS

THE ISLAMIC REPUBLIC OF IRAN, et al.,

                    Defendants.

_____/

## DECLARATION OF BOAZ SHNOOR

    I. Dr. Boaz Shnoor, declare pursuant to 28 U.S.C. § 1746 as follows:

**1. Professional Background**

    1.     I am a senior lecturer at the Academic Center of Law and Business in Ramat Gan, Israel and have been a faculty member since 2004. During this time I also held positions teaching law at the Faculty of Law of the Hebrew University in Jerusalem, Israel, at the College of Management (Academic Studies Division) in Rishon Letzion, Israel, and at the Shaarei Mada uMishpat College, in Hod HaSharon, Israel. During the academic year 2010-2011 I was a visiting scholar at Cornell University's law school. During 2015, I was a visiting scholar at the international institute for the sociology of law in Onati, Spain.

    2.     My teaching and research fields focus primarily on Israeli tort law, psychological analysis of law, honor and libel, and environmental law. I am author of the book Torts and Pollution (2010, Sacher Institute) (Hebrew), co-author of the book Libel Law - De Lege Lata and De Lege Ferenda (2005, Sacher Institute; the second edition of the book will be published in 2018),

and have authored numerous other academic and professional papers on Israeli tort law and other legal topics.

3.      I hold LL.D, LL.M and LL.B degrees from the Hebrew University. My doctoral dissertation dealt with Israeli and comparative tort law. I am a member of the Israeli Bar and licensed to practice law in the State of Israel. A copy of my curriculum vitae, which includes all publications authored by me in the past 10 years, is attached hereto as Exhibit A.

4.      During the last decade I have served as a consulting expert witness on issues related to Israeli tort law and liability for terrorist attacks in a number of cases. These include, *Sokolow et al. v. The Palestinian Liberation Organization et al.*, Case No. 1:04-cv-00397 (S.D.N.Y.); *Fraenkel v. Islamic Republic of Iran*, Case No. 15-cv-01080  (D.D.C.); *Force v. Islamic Republic of Iran*, 16-01468 (D.D.C.); *Wultz v. Islamic Republic of Iran,* Case No. 11-cv-01266 (S.D.N.Y.); *Ungar v. Palestinian Authority*, Case No. 00-cv-105 (D.R.I.); *Botvin v. Islamic Republic of Iran*, Case No. 05-cv-0220 (D.D.C.); *Rothstein v. UBS AG*, Case No. 08-cv-4414 (S.D.N.Y.); *Shatsky et al. v. The Syrian Arab Republic et al.*, Case No. 1:02-cv-2280 (D.D.C.); and *Licci v. Lebanese Canadian Bank, SAL*, Index No: 505931 / 15 (N.Y. S.Ct.).

## 2. <u>Nature of this Expert Declaration</u>

5.      I have been asked by counsel for the Plaintiffs in the above-captioned matter to describe and opine upon Israeli law regarding the tortious liability of Defendant, Islamic Republic of Iran ("Iran" or "Defendant") under Israeli law for the terrorist murder of Yitzchak Weinstock (the "Terrorist Murder") described in ¶¶ 46-54 of the Complaint in the above-captioned matter (hereinafter: the Complaint) and the resulting damages to Dov Weinstock, the decedent's father, whose estate brings a claim against Iran under Israeli law. *See* Count II of the Plaintiffs' Complaint, ¶¶ 67-76.

6. For purposes of this declaration, I will rely on the facts relating to liability and damages as they are described in the declarations that are being filed with the Plaintiffs' Motion for Default Final Judgment, cited below.

7. The bases for my opinion as set forth herein are my professional and academic legal studies, research, teaching and publishing over the course of many years, as well as the statutes, case law and authorities cited in this Declaration.

8. I have no financial interest in the outcome of this case.

### 3. Iran Is Liable to Dov Weinstock Under Israeli Law

9. In my professional expert opinion, to a reasonable degree of legal certainty, under Israeli law, the Defendant is liable in tort to Dov Weinstock under the applicable provisions of Israel's Civil Wrongs Ordinance [New Version] 5728-1968 ("CWO").

10. Defendant's liability arises from any and all of the following theories:

    a. Direct liability for Negligence: Supplying aid, support and assistance to terrorist organizations is a careless activity, and a reasonable defendant would foresee that such actions might result in terrorist attacks like the Terrorist Murder and the harm suffered by Dov Weinstock. Accordingly, such actions result in the Defendant's direct civil liability for the Terrorist Murder, under a theory of "Negligence" pursuant to Articles 35-36 of the CWO.

    b. Vicarious Liability: Iran is also vicariously liable under Article 14 of the CWO for the actions of Hamas, which committed the Terrorist Murder. Hamas's commission of the Terrorist Murder amounts to "Negligence" under Articles 35-36 of the CWO.

      c.   <u>Aiding and Abetting:</u> Given the aid, support and assistance supplied by Defendant to Hamas, Defendant's liability would also arise under Article 12 of the CWO, which addresses liability of persons aiding or abetting a tortious act.

11.    I first address Defendant's direct liability for "negligence." Defendant's liability may also be derived from the liability of Hamas itself. Therefore, I next analyze Hamas's liability according to the Israeli civil tort of negligence, and Iran's vicarious and secondary or aiding and abetting liability for Hamas's tortious conduct.

**4.   The Tort of Negligence in Israeli Law**

12.    The tort of "negligence" under Israeli law refers to a much wider range of tortious conduct than under American law. Under Articles 35-36 of the Israeli CWO, "negligence" includes unreasonable conduct that causes foreseeable harm, even where the conduct is intentional. *See e.g.* CA 4486/11 *Doe v. Doe* ¶ 10 (7.15.2013) (the Israeli Supreme Court notes the well-established rule that the tort of negligence includes intentional behavior); CA 2034/98 *Amin v. Amin* PD 53(5) 69, 81 (1999) (A widowed father who, after being re-married, intentionally refused to take care of his children for years, was held liable in negligence for the harm caused to them). Thus, even intentional tortfeasors are routinely held civilly liable in Israel under a theory of "negligence."

13.    Therefore, a defendant which deliberately assists a terrorist is liable in negligence to the terrorist's victims. Thus, in CA 2144/13 *Mentin v. The Palestinian Authority* ¶ 94 (12.6.2017) the Supreme Court affirmed a lower court decision finding the Palestinian Authority liable in negligence for intentionally providing terrorist indoctrination and training to a young man, who then decided to carry out a terrorist murder.

14.    The tort of negligence provided for in the CWO consists of four elements: a duty of care; breach of a duty of care (i.e. carelessness, which may include intentional conduct);

proximate cause (sometimes divided into cause-in-fact and legal causation); and harm. *See e.g.,* CA 243/83 *City of Jerusalem v. Gordon*, P.D. 39(1) 113, 128 (1985) (The City of Jerusalem was held liable in negligence for the negligent false imprisonment of Plaintiff); *see also Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 58 (D.D.C. 2010) (applying Israeli law, enumerating the elements above, and finding Iran liable for a terrorist attack under a negligence theory).

### 5. The Defendant is Primarily Liable in Negligence

15.     Under Israeli law, Iran is directly liable in negligence for the Terrorist Murder. All of the elements of negligence are satisfied here.

#### *Duty of Care*

16.     The duty of care element is sometimes divided between the conceptual duty of care and concrete duty of care (CA 1167/11 *Doe v. Doe* (11.18.2013)) (A *kibbutz* owes a conceptual duty of care [but not a concrete one, due to the circumstances of the case] to the children residing within the *kibbutz*, to protect them against sexual assault by other minors living in the *kibbutz*). However, it has been said repeatedly by the Israeli Supreme Court that a conceptual duty of care always, or almost always, exists, (CA 915/91 *Levi v. The Authority for Regulating the Insurance Market* P.D. 48(3) 45, 67 (the State's insurance regulator owes a conceptual duty of care to an insured person who could not collect his insurance money after an accident, due to his insurance company's liquidation); CA 10078/03 *Shtil v. The State of Israel* (3/19/2007) (the State owes a duty of care to a farmer to provide water that is suited to his crops) and therefore it has been suggested to abolish it altogether. Moreover, Israeli courts analyze this element by using policy considerations and therefore there is no separate need to establish proof on that point.

17.     Under the conceptual duty of care the court asks itself whether, in relation to the *type* of people to which the defendant belongs, the *type* of plaintiffs to which the plaintiff belongs,

the *type* of activity the defendant did, and the *type* of harm which was caused, the reasonable person could and should have foreseen the *type* of harm (CA 243/83 *City of Jerusalem v. Gordon*, P.D. 39(1) 113, 129 (1985)). Under the element, the court emphasizes general policy considerations, and disregards the details of the current case (CA 1167/11 *Doe v. Doe* (11.18.2013)).

18.     On the other hand, under the concrete duty of care the court delves into the details of the case and asks whether the specific defendant could and should have reasonably foreseen the specific harm which was caused to the specific plaintiff. Here the court will emphasize pragmatic and fact specific considerations (C.A. 3521/11 *Vagner v. Abadi* ¶ 6, 8 (6/22/2014).

19.     It is a fundamental rule of Israeli tort law that a duty of care (both conceptual and concrete) is presumed to exist whenever a reasonable person could have foreseen that the conduct at issue could cause harm of the type alleged. (*City of Jerusalem*, *id*. at 131-132). CWO § 36 provides that the duty of care identified in CWO § 35 is owed to all persons to the extent that a reasonable person would have foreseen under the same circumstances that, in the ordinary course of events, the victim was likely to be injured by the conduct of the tortfeasor.

20.     In a recent case, the Supreme Court affirmed the district`s court conclusion that the Palestinian Authority (PA) owed both a conceptual duty and a concrete duty toward terrorist victims and their families to prevent terrorist acts (*Mentin*, *id.*, at ¶¶ 23, 60) (The terrorist, a 15 years old youth underwent para-military training in a Palestinian Authority camp).

21.     Thus, refraining from providing material support to a terrorist organization is undoubtedly included within this duty of care,

22.     It is common knowledge (and the declarations of plaintiffs' liability witness, Messrs. Levitt, Clawson, Shaked and Spitzen attest), that Hamas is a terrorist organization that

embraces violence in practice and as a guiding principle. Therefore, any government that funds, arms, trains and otherwise helps Hamas, and encourages it to commit terrorist activities, can and should reasonably foresee that terrorist actions which will cause harm to people are foreseeable results. Therefore, a conceptual duty of care between the Defendant and the Plaintiffs does exist.

23.     Moreover, given the specific facts of the case it seems that a concrete duty of care exists as well. Iran could and should have seen that the help that is provided to Hamas would likely result in murder and personal injury.

24.     Therefore, in my expert opinion, both conceptual and concrete duties of care exist in this case between the Defendant and the Plaintiffs.

### _Breach of the Duty of Care_

25.     Conduct that demonstrates a lack of care constitutes a breach of the duty of care.

26.     The Defendant's activities were clearly careless and were a breach of the Defendant's duty of care. As stated in the declarations of Dr. Clawson, Dr. Levitt and Dr. Shaked, the Defendant provided material support to Hamas, including financial support and professional military training for the planning and execution of terrorist attacks, thereby enabling it to carry out countless terrorist attacks and murders. These actions would, without doubt be considered as a breach of the Defendants' duty of care, under Israeli law.

27.     Indeed, in the _Mentin_ case the Supreme Court, held that the PA liable in negligence for a murder committed by a youth who was acting independently. The court stressed that three elements of the PA's behavior were negligent and caused the harm: The PA's ideological support of terrorism; the financial support it provided to terrorists which enabled the development of terrorist organizations; and the material support the PA gave terrorist organizations (providing weapons and intelligence).

28.     In this case, the facts affirmed by Plaintiffs' liability experts satisfy all those three elements, and therefore in my professional opinion to a reasonable degree of legal certainty, the facts as pled in the Complaint evidence a breach of duty owed to the Plaintiffs

*Causation*

29.     Furthermore, in my professional opinion to a reasonable degree of legal certainty, under Israeli law, the causation element of negligence, both causation in fact and legal causation (proximate cause) is met here.

30.     Cause in fact for negligence liability is generally determined in Israel according to the "but for" test (CA 145/80 *Va'aknin v. The City of Beit Shemesh*, P.D. 37(1) 113, 144). However, in cases where it is clear that defendant's actions increased the chances that the plaintiff will suffer harm, the burden shifts to the defendant to show that its conduct was not the cause of the injury (LFH 6714/02 *Shimon v. Kupat Holim* ¶ 6 (4.7.2003); CA 3108/91 *Reivi v. Veigel* P.D. 47(2) 497, 518 (1993).[1] In this case, it is clear from Plaintiffs' liability experts (Clawson, Levitt and Shaked) that Iran's provision of material support to Hamas was very extensive, and its contributions of tens of millions of dollars and its training of hundreds of Hamas men in the period prior to the attack increased the likelihood of the attack and appears to easily have been sufficient to enable the attack. Given these circumstances, Israeli law will impose negligence liability on Iran, unless Iran were to prove that its conduct was not the cause of the Terrorist Attack at issue in this case. Since Iran has not appeared in the case and sought to do so, cause-in-fact is satisfied.

31.     There are three different tests for determining legal causation: proximity, zone of risk and common sense (CA 2028/99 *Pe'er v. Silovat Inc.* P.D. 55(3) 493, 500 (An engineer was held liable in negligence for the harm caused when a building he designed collapsed; his plans

---

[1] This burden-shifting is not a rule of evidence law, but of substantive tort law.

were not fully followed, and he failed to adequately warn the owners of this risk)). However, the main fact that determines the result of all three tests is foreseeability – the ability of the reasonable person to foresee the harm (CA 8199/01 *Miro v. Miro*, P.D. 57(2) 785, 791-792 (a policeman on leave negligently brought a loaded gun to a party. A family member, thinking it was unloaded, grabbed it and shot another family member. The policeman and the police force were held liable)). Once the reasonable person could have foreseen that a harm of the kind that happened might happen, the legal causation requirement is met. Again, it is clear that Iran could have foreseen (and even intended) the tragic results of providing material support to Hamas, including the murder of persons such as Yitzchak Weinstock and the extreme emotional harm caused to their family members.  Therefore, the proximate cause element is satisfied in this case.

32.     Hence, it is my expert opinion that proximate cause exists in this case.

*Harm*

33.     Dov Weinstock clearly suffered harm that is recognized by Israeli law. Israeli courts distinguish between principal and secondary victims. Principal victims are those people who were affected directly by the tortious behavior, including those who suffer fear or any other negative emotion as a result of being in the zone of danger. Secondary victims on the other hand are those people whose harm was caused solely due to the effect that the harm that a principal victim suffered, had on their health and emotional state (C.A. 9466/05 *Shwaeki v. The State of Israel*, ¶ 20 of Justice Hayut's judgment (3.16.2008)).

34.     Principal victims are entitled to compensation for all their monetary and non-pecuniary damage. Secondary victims on the other hand are entitled to compensation subject to four conditions (C.A. 444/87 *AlSuha v. The Dahan Estate*, P.D. 44(3) 397 (1990)):

a.  The secondary victim is a first degree family member (spouse, sibling, parent or child) of the principal victim;

b.  The secondary victim witnessed the event (directly or through the media), or its consequences (e.g. witnessing the principal victim in hospital) *ibid*, at p. 435; *Shwaeki*, at ¶ 18 of VCJ *Rivlin*; LCA 5803/95 *Zion v. Zach* 51(2) P.D. 267, 270-275. For example in *AlSuha*, at ¶ 21, the principal victims were injured in car accidents. The secondary victims did not witness the accident itself but saw the principal victims in the hospital and were next to them until their death, which satisfied the court. The court stressed that as long as the damage was foreseeable, the method by which the secondary victim learned of the principal harm – witnessing the incident, hearing about it from someone else, and seeing it on the television, were some of the examples the court gave - is irrelevant (See also C.A. 9159/08 *Illit Insurance v. Goroditzki*, (16.12.2010) (A mother who was not present at the time of her daughter's accident wad compensated for the losses resulting from her emotional and psychological harm; C.C. (Jerusalem district court) 9135-07 *Mashiach v. PA* ¶ ¶ 209-217 (9.17.2018) (The principal victim suffered PTSD following a suicide terrorist attack he witnessed. His wife and children suffered emotional harm after seeing him at the hospital and living with him. The court stated that either of the two forms of exposure to the primary victim would have been enough to allow the wife and children to be eligible for compensation.). It should be noted that *AlSuha*, which was the first case in Israel to compensate secondary victims for their harm, is still cited as the leading case. In later cases the courts have stressed that

10

they tend to be lenient with regard to this (and the following) conditions even more than allowed by the *Alsuha* court itself (C.A. 1597/15 *Doe v. Doe* ¶ 9 (1/20/2016)).

c.  Time and space proximity between the two harms. As the Supreme Court stated "This requirement was interpreted in a flexible way; it was ruled that even harm that occurred far away from the prime scene, after a long time, or as a result of continuing exposure and not immediate shock, might be compensable. The decisive factor is causal proximity" *Shweki,* ¶ 18 of VCJ Rivlin. *See also* C.A. 1597/15 *Doe v. Doe* ¶ 9 (1/20/2016).  Indeed, to the best of my knowledge, the only case in which the Supreme Court rejected a claim based on the fact that the second and third condition were not met, involved a case in which a mother sued for the harm she suffered after her twenty-five year old daughter told her that twenty years earlier the daughter's uncle had molested and raped her. In this case the court said that a twenty year lapse between the acts and the harm renders the ensuing emotional harm unforeseeable (C.A. 1597/15 *Doe. V. Doe* (1.20.2016)).

d.  The secondary victim should suffer severe harm: mental illness or disturbance (or physical harm) which obstructs daily function (L.C.A. 217/16 *Estate of Roe v. Clal Insurance company* ¶ 16 (2.14.2016)). In a recent case, the Jerusalem District Court (which deals with most tort claims based on terrorist actions) stated that it would be more flexible in applying this condition in cases based on terrorist attacks than in other cases. Therefore it held that the wife and children of the principal victim had established sufficient injury where they had

not undergone any psychological evaluations and where the children continued their usual day-to-day activities in kindergarten and school. The finding of sufficient injury was based solely on their testimony that their life had changed after their spouse and father began suffering PTSD due to a terrorist attack he witnessed (C.C. (Jerusalem District Court) 9135-07 *Mashiach v. PA* ¶¶ 218-233 (9.17.2018)).

35.     In the instant case, Dov Weinstock was the father of Yitzchak Weinstock (Complaint ¶¶ 3, 8, 68), and is a first-degree relative of the principal victim. Dov learned that his son was shot and grievously injured within, at most, a few hours after the attack. Decl. Sharon Weinstock ¶ 9. Dov was at the hospital while Yitzchak was undergoing surgery and, together with the Weinstock family, friends, and even strangers, waited and prayed, knowing the severity of Yitzchak's injuries. Decl. Sharon Weinstock ¶¶ 9-12; Decl. Moshe Weinstock ¶¶ 10-11.

36.     According to Sharon Weinstock, when the doctors informed Yitzchak's parents that Yitzchak had died, Dov could not bring himself to even approach his son's lifeless body. He stood at a distance and looked on as Sharon said goodbye to their son. Decl. Sharon Weinstock ¶ 12. These facts satisfy the first and second conditions enumerated above.

37.     The severe mental and emotional anguish that Dov Weinstock suffered caused him almost immediately following the Terrorist Murder to suffer a mental or emotional illness or disorder that interfered with his day to day life. Decl. Moshe Weinstock ¶¶ 14, 18, 24-27; Decl. Aryeh Weinstock ¶¶ 17-18; Decl. Mishael Weinstock ¶¶ 8, 13-15; Decl. Sharon Weinstock ¶¶ 23-26; Decl. Jess Dolgin ¶ 11. Thus the third and fourth conditions are satisfied as well.

38.     This conclusion is based upon the Weinstock family's several declarations that tell of Dov's complete inability to cope with his son's murder which completely changed the course

of his life and had daily impact on him. As indicated in the declarations cited in the previous paragraph: Dov was unable to sleep, and spent his nights driving aimlessly through the desert and Arab villages, claiming to be searching for Yitzchak's murderers; He was emotionally unable to perform his duties as father to his surviving children;  his incapacity was so complete that he asked his oldest son, Moshe, to "take over" as "father" of the family because he was no longer able to function; Dov lost all enjoyment of life; Dov was also unable to perform at work. The family declarations demonstrate that Yitzchak's murder left Dov a disfunctional and broken man.

39.    Therefore, it is my expert opinion to a reasonable degree of legal certainty that under Israeli law Dov Weinstock would be recognized as a secondary victim entitled to be compensated for the harms he suffered as the result of the murder of his son, Yitzchak.

40.    Once a secondary victim proves that he fulfills all four conditions, he is entitled to be compensated for all the losses that he suffered as the result of the defendant's behavior. Thus the secondary victim can be compensated for both the monetary and non-pecuniary losses he suffered.

41.    I am informed that the Plaintiffs are not seeking compensation for Dov's monetary losses. However Dov's estate is entitled to compensation for all the non-pecuniary losses he suffered, i.e. his mental anguish and suffering due to the defendant's behavior (C.A. 754/05 *Levi v. Sha'arei Zedek Hospital* PD 62(2) 218, at ¶ 30 (2007)); C.A. 4576/08 *Ben-Zvi v. Hiss* (7.7.2011)).

42.    These factual assumptions based upon the verified declarations filed by the Plaintiffs establish the harm suffered as a result of Iran's tortious conduct.

13

43.     Therefore, in my professional expert opinion, to a reasonable degree of legal certainty, under Israeli law, Defendant Iran is liable in direct negligence to Dov's estate.[2]

### 6.  Iran's Vicarious and Secondary Liability

44.     In addition to being primarily liable to Dov Weinstock for its own negligence, under Israeli law, Iran is vicariously liable for the "negligence" of Hamas; it is also liable for aiding and abetting Hamas's "negligent" conduct.

45.     Both of these additional theories of liability are based upon a finding that Hamas would be primarily liable for negligence under Israeli law. Accordingly, I discuss the grounds for such a finding and then address the specific bases for findings of vicarious liability and aiding and abetting liability.

### 7.  Hamas Would Be Liable for Negligence

46.     As discussed above, under Israeli law, intentional terrorist attacks are subject to civil liability under a negligence theory.

47.     Based upon the discussion above, it is my opinion that to a reasonable degree of legal certainty, under Israeli law, Hamas owed both a conceptual and concrete duty of care both directly to Yitzchak and to Dov, not to harm Yitzchak.

48.     By murdering Yitzchak Weinstock, Hamas breached these duties.

49.     Furthermore, in my professional opinion to a reasonable degree of legal certainty, under Israeli law, the causation element of negligence, both causation in fact and legal causation (proximate cause) are satisfied as to Hamas.

---

[2] Article 19 of the CWO expressly provides that tort claims available to a person pass to his or her estate upon that person's death. In other words, Dov's estate can bring the same claims Dov would be able to bring if he were still alive.

50.     As noted above, cause in fact is generally determined in Israel according to the "but for" test (CA 145/80 *Va'aknin v. The City of Beit Shemesh*, P.D. 37(1) 113, 144). The question is a factual one. In this case it is clear that "but for" Hamas's shooting attack Yitzchak would not have been murdered and Dov would not have suffered the severe emotional harm.

51.     As discussed, the key factor in determining legal causation is foreseeability -- the ability of the reasonable person to foresee the harm (CA 8199/01 *Miro v. Miro*, P.D. 57(2) 785, 791-792). Again, it is clear that Hamas foresaw and even intended the harm to persons such as Yitzchak and Dov Weinstock, and therefore the legal and proximate cause element is satisfied in this case.

52.     The element of harm is also satisfied in this case, since the definition of "harm" in Article 2 of the CWO includes secondary harm like the severe emotional distress suffered by Dov Weinstock. *See also* e.g. the *Mentin* Supreme Court decision (holding the PA responsible for a terrorist attack); and the *Mashiach* district court case (holding Hamas responsible for a terrorist attack).

53.     Therefore, it is my professional opinion to a reasonable degree of legal certainty that under Israeli law Hamas is liable for the tort of negligence for the Terrorist Murder of Yitzchak Weinstock and the severe emotional harm suffered by Dov Weinstock.

## 8.  **Defendant's Vicarious Liability**

54.     Article 14 of the CWO provides that a principal is liable for any act done by an agent in the process of fulfilling his duties as an agent. The liability of the principal is strict and it does not matter whether he intended the agent to perform the tort or not, whether he knew about the possibility of the happening of the tort or not, or whether he was negligent or not in hiring the agent. Under Israeli law, the mere fact that the agent was indeed the principal's agent is sufficient

to deem the principal liable for any tort done by the agent in the course of fulfilling the agency (CA 502/78 *The State of Israel v. Nissim*, PD 35(4) 748 (1981) (a principal was held liable for a car accident that was caused by the agent's negligent driving)).

55.     The exact boundaries of agency under Israeli law are not entirely clear (C.A. 675/75 *Middle East Pipes v. Shaebi*, PD 31(3) 225, 229 (1977)). However, the common formulation is that a person becomes an agent if he substitutes for the principal in fulfilling a mission; if the agent is the "long hand" of the principal (*Nissim*, at 755; C.A. 273/80 *Medinah v. Cohen* PD 37(2) 29, 38 (1983)). For example, company A would be considered the agent of company B, if the actions of company A are an integral part of the business of B.

56.     According to the facts stated in the declarations of Dr. Clawson and Dr. Levitt, Iran considered terrorist attacks against targets in Israel to be one of its goals.  Terrorism was part of the "business plan" of Iran, and since it could not fulfill this goal directly, it "recruited" Hamas to commit the terrorist actions on its behalf. Therefore, Hamas was the agent of the Defendant in carrying out terrorist attacks, including the Terrorist Murder of Yitzchak Weinstock.

57.     Therefore, it is my professional opinion to a reasonable degree of legal certainty that the Defendant is vicariously liable for the Terrorist Attack under Article 14 and the civil wrong of negligence (Articles 35-36 of the CWO).

**9.  <u>Aiding and Abetting</u>**

58.     Article 12 of the CWO states that anyone who helps another or encourages him to perform a civil wrong is liable as if he committed the wrong himself.

59.     Israeli courts have ruled that in order for a person to be liable according to this Article, a person should either aid the principal actor in performing a civil wrong (e.g. by providing the means or the opportunity to commit the civil wrong or by otherwise providing needed help) or

encourage him to perform it, foreseeing that the principal actor is about to commit the wrong, even if the aider did not intend for the principal actor to commit a civil wrong (CA 6871/99 *Rinat v. Rom*, P.D. 56(4) 72, 81-82 (2002) (answering a reporter's questions does not lead to liability for libel under Article 12 of the CWO as long as the answers that were given did not constitute libel because Defendant could not foresee that the reporter will publish them in libelous way). Moreover, in CA 5977/07 *Hebrew University v. Schocken Publishing House Ltd*., (6/12/2011) the Supreme Court held that imposing liability under § 12 does not require "but for" causation. Rather, as long as the defendant's actions significantly contributed to the tortious actions of the direct tortfeasor, then liability under § 12 will be imposed.

60. For example, In the *Mashiach* case, the district court emphasized that: "The fact the PA transferred funding and weapons to terrorist organizations, is by itself enough to render it liable under Article 12 of the CWO." (*Id*. at ¶ 383).

61. In the instant case, it is clear from the facts as described in the declarations of Plaintiffs' liability experts, Iran did in fact provide Hamas with the means necessary to commit the Terrorist Murder. It is further clear that Iran assisted Hamas knowing it was foreseeable that this would result in Hamas carrying out terrorist attacks against innocent civilians such as Yitzchak Weinstock.

62. Therefore, it is my expert opinion to a reasonable degree of legal certainty, that Iran is liable under Israeli law for aiding (under Article 12 of the CWO) the negligence (Articles 35-36 of the CWO) committed by Hamas.

**10. <u>Conclusion</u>**

63. As outlined above, it is my opinion to a reasonable degree of legal certainty that under applicable Israeli law as applied to the facts of this case, the Defendant is  directly liable for

its own negligence in providing material support to Hamas, and vicariously and secondarily liable for the actions of Hamas which carried out the Terrorist Murder.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 6, 2018

_____
Dr. Boaz Shnoor

*CV Boaz Shnoor, October 2018*

# Curriculum Vitae - Boaz Shnoor

## Education

1997 - 2004   LL. D (direct track), Law faculty, Hebrew University, Jerusalem
Doctoral advisor: Prof. Israel Gilead.
Dissertation topic: "Torts as a Means of Preventing Environmental Pollution"
(submitted 2004, approved 2005)

1996 - 1999   LL.M., Law faculty, Hebrew University, Jerusalem (as part of accelerated doctoral program)

1991 - 1995   LL.B., (*magna cum laude*), Law faculty, Hebrew University, Jerusalem

## Academic and Professional Experience

2013 -   Senior Lecturer - College of Law and Business
Courses: Tort Law, Environmental Law, Causation in Tort, The psychology of judging, Libel and Privacy Law, Causation in Tort, Uncertainty in Tort Law

2010 – 2011 Visiting Scholar, Cornell University Law School

2018 -   Adjunct Lecturer, Sha'arei Mishpat College - Tort Law, Libel law
2007 – 2008

2004 - 2013  Lecturer - Academic Center of Law and Business

2002 - 2016  Adjunct Lecturer, Law faculty, Hebrew University, Jerusalem – Tort Law, Environmental Law and Causation in Tort Law, Seminar in Libel law

2002 - 2017  Adjunct Lecturer, School of Law, the College of Management, Academic Studies, Rishon LeZion – Tort Law, Causation in Tort Law, Seminar on the tortious protection of personal and economic interests

2007 – 2008 Adjunct Lecturer, Sha'arei Mishpat College - Tort Law

2003 - 2004  Adjunct Lecturer, Academic Center of Law and Business - Environmental Law

2002 - 2004  Student advisor, Law faculty, Hebrew University, Jerusalem

1999 - 2002 Assistant student advisor, Law faculty, Hebrew University, Jerusalem

1

*CV Boaz Shnoor, October 2018*

1994 - 2001  Teaching assistant in Corporate Law, Tort Law and Criminal Law, Law faculty, Hebrew University, Jerusalem; Academic Center of Law and Business

1994 - 1997  Ephraim Abramzon & Co., Law Offices (student, intern, lawyer)

1993 - 1996  Research assistant for Prof. Israel Gilead

1992 - 1993  Research assistant for Prof. Yoram Shahar

## Grants

2017 – 2018  The Consequences of Policy Changes regarding the use of Age Criteria in Organ Transplantation, *The Israel National Institute for Health Policy Research* 123,000 NIS (together with Eyal Katvan, Tamar Ashkenazi, Israel Doron, and Eitan Mor)

2015  Honor in a Changing Society, *Israel Science Foundation* Research Workshop Grant 68,000 NIS (together with Eyal Katvan)

2014  Lawyers (in)Civility in Courts – Empirical Research of Judges Attitudes, *Research Grant by the David Weiner Center for Lawyers Ethics and Professional Responsibility* 5,000 NIS (together with Eyal Katvan)

2013 - 2018  Kavod (honor) and its Legal Defense in Mandatory Palestine Values in "Melting Pot" Societies, *Israel Science Foundation* 360,000 NIS (together with Eyal Katvan)

## Journal Editing

2017 – 2018  Visiting Co-Editor, the International Journal of the Legal Profession

2016 – 2017  Co-Editor, The Oñati Socio-Legal Series, Too Few Judges: Regulating the Number of Judges in Society issue

1993 – 1994  Editor in Chief "Mishpatim" Law Review

1992 – 1993  Member of the Editorial Board "Mishpatim" Law Review

## Conference Organization

2016  Workshop on "Too Few Judges: Regulating the Number of Judges in Society". Oñati International Institute for the Sociology of Law. Coordinator (with Marc Galanter, Eyal Katvan, Ulrike Schultz, Avrom Sherr)

*CV Boaz Shnoor, October 2018*

2016        International Research Workshop of the Israel Science Foundation on "Honor in a Changing Society". Organizing committee (with Dr. Eyal Katvan) and Scientific Committee (with Prof. Miri Gur-Arye, Prof. Yoram Shachar, Dr. Khalod Ghanayim and Dr. Eyal Katvan), College of Law & Business, Ramat-Gan, Israel

**Public Committees**

2015 - 2016   The Ministry of Health Public Committee for the Regulation of Procedures regarding Living Organ Donors

2013        The Public Commission on Age as a Criteria for Receiving Organ Donations

**College Committee Assignments**

2013 - 2018  Chairperson, Institutional Ethical Review Board

2011 – 2018  Chairperson, Students' Disciplinary Appeals Board

2006 – 2010  Chairperson, Students' Disciplinary Board

**Other College Assignments**

2013 - 2014  Drafting the College Tuition Regulations

2011 – 2012 Drafting the Law School *Ethics in Research* Regulations

2008 – 2011 Drafting the College Teaching Regulations

**Law School Assignments**

2013 – 2014 Drafting the Law School Teaching Regulations

2005 - 2013  Founder and Academic Supervisor of the Environmental Law Clinic

**Professional Memberships**

2010 -      The Society for Empirical Legal Studies

2002 -      Israel Society for Ecology & Environmental Quality Sciences

1998 -      Adam Teva V'din - Israel Union for Environmental Defense

1996 -      Israeli Bar

*CV Boaz Shnoor, October 2018*

# **List of Publications**

## **Books**

1.  LIBEL LAW - DE LEGE LATA AND DE LEGE FERENDA  (2nd Ed., to be published, 2018, The Sacher Institute and The Israel Democracy Institute, Heb., ___ pages) (with K. Genaim, M. Kremnitzer)
    ------------------------------------------------------------------------------------
1a  LIBEL LAW - DE LEGE LATA AND DE LEGE FERENDA  (2005, The Sacher Institute and The Israel Democracy Institute, Heb., 487 pages) (with K. Genaim, M. Kremnitzer)

2.  TOXIC TORTS (2011, Nevo Publishing and The Sacher Institute, Hebrew University, Heb., 613 pages)

## **Articles**

3.  "Sub Judice and Free Speech: Balancing the Right to a Fair Trial against Freedom of Expression in Israel" 18(1) *San Diego International Law Journal* 39-70 (2018) (with Doron Menashe)

4.  "Lawyers` Honor in the Professional and Private Spheres" 11(2) *Haifa L. Rev. (Din Udvarim)* 457 (2018) (with Eyal Katvan and Limor Zer-Gutman) (Heb.)

5.  "Court's Precious Time: Transparency, Honor and Judicial Scarce Resources" 7(4) *Oñati Socio-legal Series*, 825-846 (2017) (with Eyal Katvan) [peer-reviewed]

6.  "Informed Consent to Legal Treatment – Lessons from Medical Informed Consent" 24(2) *The International Journal of the Legal Profession* 125-144 (2017) (with Eyal Katvan)[peer-reviewed]

7.  "Age limitation for organ transplantation: the Israeli example" 2016 *Age and Ageing* 1-3 (with Eyal Katvan; Israel Doron; Tamar Ashkenazi; Hagai Boas; Michal Carmiel-Haggai; Michal Dranitzki Elhalel; and Jacob Lavee) [peer-reviewed]

8.  "Sub Judice and Freedom of Speech – Words in the Air and the Dead Letter of the Law" 12 *Alei Mishpat* 261-284 (2015, Heb.)

9.  "Judges 'Perception of Lawyers' Behavior in Court" 21 *HaMishpat* 11-49 (2015, Heb.) (with Chemi Ben Noon, Eyal Katvan)

10. "Truth, Lies, and in Between them – Developments in Israeli Libel Law 2012" 8 *Din U'Dvarim* (2014, Heb.) 197-239.
    ------------------------------------------------------------------------------------------
*11.* "On the Relationship between Setting the Legal Rule and Adjudicating the Concrete Case" 10 *Alei Mishpat* (2012, Heb.) 7-52

4

12. "Between Civility and Reputation, Following C.A. 1104/07 Kheir v. Gil" 15 *Hamishpat* 71-110 (2010, Heb.) (with Eyal Katvan)

13. "Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" 33(1) *American Journal of Trial Advocacy* 71-112 (2009)

14. "Consequences of Ignoring Uncertainty – 'Probability of Causation' in Radiation Cases 39(1) *Environmental Policy and Law* 70-72 (2009) (with Talma Izak-Biran, Richard Laster, Tamar Berman)

15. "Causation in Fact in Toxic Torts", 23(2) *Law Studies* 559-620 (2007) (Heb.)

16. "The Theoretical Foundation of Proportional Liability in Israel" 37 *Mishpatim Law Review* 177-218 (2007). (Heb.)

17. "Volenti Non Fit Injuria: Theory and Reality", *1 Alei Mishpat* (2000), pp.327-354 (Heb.)

**Book Chapters**

18. "The Ringworm Victims Compensation Act, 1994 – Between legislation and case law, Rhetoric and Compensation" in *Ringworm and Ringworm Irradiation in Israel and Around the World* (temporary name), (Shifra Shvarts, Ed., to be published 2018), (with Eyal Katvan) (Heb.) [peer-reviewed]
--------------------------------------------------------------------------------------------

19. "Causal Uncertainty and Proportional Liability in Israel" in *Proportional Liability – Analytical and Comparative Perspectives* pp. 183-198 (Israel Gilead, Michael D. Green, Bernhard A. Koch, Eds., De Gruyter publishing, 2013) (with Israel Gilead).

20. "Ringworm, Irradiation, and Compensation: The International Legal Aspects" forthcoming in *Ringworm, Irradiation, and History*, **(**Theodore M. Brown, Shifra Shvarts , Siegal Sadetzki, Eds., The University of Rochester Press and Boydel & Bruer inc., to be published) (with Eyal Katvan) *Approx. 55 pages*

21. "Pure Economic Loss in Israel" in *PURE ECONOMIC LOSS* 186-217 (Mauro Bussani, Vernon Palmer, Eds., Routledge-Cavendish publishing, 2009)

21a A revised version of this chapter was published in ISRAELI REPORTS TO THE XVII INTERNATIONAL CONGRESS OF COMPARATIVE LAW 199-230 (The Sacher Institute, 2009) (with Tamar Gidron)

22. "Libel Law" in DEFENDING FREEDOM OF SPEECH IN THE DEMOCRATIC STATE (M. Kremnitzer ed., 2003, The Israel Democracy Institute, Heb.) pp. 179 – 233 (with K. Genaim, M. Kremnitzer)

*CV Boaz Shnoor, October 2018*

## **Conference Papers**

"Judges' Precious Time: Let's talk about it" Workshop on Too Few Judges: Regulating the Number of Judges in Society. Onati International Institute for the Sociology of Law. June 2016 (with Eyal Katvan)

"Eastern or Western 'Kavod'? Honor in Informal Courts in Mandatory Palestine" 32nd annual Conference of the Association for Israel Studies, Jerusalem, June 2016 (with Eyal Katvan)

"Honor in Informal Courts in Mandatory Palestine" Research Workshop of the Israel Science Foundation - Honor in a Changing Society, Ramat-Gan, June 2016 (with Eyal Katvan)

"Informed Consent to Legal Treatment" Workshop on Consumer Redress When Lawyers Are Negligent. Oñati International Institute for the Sociology of Law. July 2015 (with Eyal Katvan)

"`But Your Honor, he Started it`: Honor and the Regulation of Emotions in Informal Courts in Mandatory Palestine", The Association for Law & History Conference, Jerusalem, October 2015 (with Eyal Katvan)

"Judges' Perceptions of Counsels' Behavior in Court" Lawyers' Legal Ethics and Professional Responsibility – Hamishpat Law Review, Tel-Aviv, April 2015

"Courts as the Creators of Legal Rules : The Case, the Judge, the Court and the State" How Objective Can Judges Be: Legal Rule, Evidence, Narratives, Society, University Centre Saint-Ignatius Antwerp, Antwerp, May 2014

"The History of the Struggle between Freedom of Speech and Honor – Legislation vs. Adjudication" The Law and History Association Annual conference, Jerusalem, October 2013

---------------------------------------------------------------------------------------------------

"Cases, Judges, or Politics – What make American Courts Change Tort Law?" The Law and Society Conference, College of Law and Business, Ramat-Gan, December 2012

"Libel Law in Israel 2012" The Legal Year Conference, Haifa University, Haifa, October 2012

"Archives with Honor" The Law and History Association Annual conference, Jerusalem, October 2012 (with Eyal Katvan)

"Intermediaries Liability for Libel - Lessons from Past Developments in Israeli Courts and the Knesset" Intermediary Liability in the Digital Age, Haifa University, Haifa, May 2012

"To Accept or Not to Accept – A study of U.S. State Courts Law Changing Decisions" The Annual Private Law Society Conference, Bar-Ilan University, Ramat-Gan, May 2012

"Torts as Regulation of Off-Shore Drills" Regulation of Off-Shore Drills, Tel-Aviv University, Tel-Aviv, April 2012

"A Community with Its Own Dignity" The Annual Conference of the Israeli Association of Law and Society, Bar Ilan University, Ramat-Gan, December 2011 (with Eyal Katvan)

"Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts Decisions to Accept or Reject the Loss of Chance Doctrine" the 3rd Annual Conference of the Israeli Association of Private Law, Ramat-Gan, May 2012

"Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts Decisions to Accept or Reject the Loss of Chance Doctrine" Faculty Seminar, Academic Center of Law & Business, Ramat-Gan, November 2011

"Cases, Judges, States, or Politics - What is it that Changes the Law? A Study of States' Supreme Courts Decisions to Accept or Reject the Loss of Chance Doctrine" the 6th Annual Conference on Empirical Legal Studies, Chicago, November 2011

"Terms of Betrayal – Legal and behavioral aspects of ringworm treatment in Israel", Association for Israel Studies, Boston, June 2011. (with Eyal Katvan)

"The Influence of Betrayal on Law Making: Lessons from the United States and Israel". Berger International Legal Studies Program Speaker Series, Cornell University, Ithaca, New York, March 2011

"Behavioral Analysis of the Ringworm Law", Conference on New Research Aspects of the Ringworm Disease in the Mass *Aliya* in Israel and Abroad, The Gertner Institute for Epidemiology and Health Policy, the National Center for Compensation of Ringworm Victims, Tel-Hashomer, January 2010 (with Eyal Katvan)

"Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" Faculty Seminar, Academic Center of Law and Business, December 2008

"Punitive Damages, Compensation for Non-pecuniary Harm and Compensation without Proof of Harm" Conference: "Between Criminal and Civil", Tel Aviv Magistrates' Court and the Academic Center of Law and Business, November 2008

"Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" The Yuval Levy & Co. Law & Environment Workshop, the Law Faculty, Tel Aviv University, November 2008

"Economic Incentives and Pollution: Goal and Methods", Conference on Economic Incentives in Environmental Law, Academic Center of Law and Business, June 2008

"Loss of Chance: A Behavioral Analysis of the Difference between Medical Negligence and Toxic Torts" Faculty Seminar, Law School, The College of Management Academic Studies, Rishon LeZion, May 2008

"Evidence Law and Uncertainty in Tort Law", Conference on Evidence Law, Haifa University, Haifa, May 2008 (Heb.)

"Libel law – Theory and Reality" Conference on Libel Law in The Israel Democracy Institute, Jerusalem, March 2007 (Heb.)

"Pure Economic Loss in Israel", the 17th Congress of the International Academy of Comparative Law, Utrecht, The Netherlands, July 2006 (with Tamar Gidron)

"Pets, Torts and Animal Rights", Conference on Animal Rights and Biodiversity, Academic Center of Law and Business, May 2006. (Heb.)

"Environmental Law: From Public to Private Enforcement", the 8th International Conference of the Israel Society for Ecology and Environmental Quality Sciences - Living with Global Change: Challenges in Environmental Sciences, Rehovot, Israel, May - June 2005

"The Causal Connection in the Shamgar Committee Report on the Kishon River", the 13th annual conference of the Rationality Center of the Hebrew University, Ein Gedi, Israel, December 2003 (Heb.)

"Causation in Environmental Torts", the annual convention of the Israel Society for Ecology and Environment, Tel Aviv, Israel, December 2002 (Heb.)